UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRYAN MANUEL ARIAS MARTINEZ<br><br>  Petitioner,<br><br>v.<br><br>DAVID T. WESLING, Field Office Director, Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; TODD BLANCHE, Acting U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; and ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility,<br><br>  Respondents. | Civil Action No. 26-cv-12878-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Currently before the Court is Petitioner Bryan Manuel Arias Martinez's petition for writ of habeas corpus under 28 U.S.C. § 2241 in which he seeks his immediate release from custody. [ECF No. 2].  Respondents oppose the Petition, contending that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) or § 1226(c).  [ECF No. 9].  For the following reasons, the petition is **GRANTED IN PART** and **DENIED IN PART**.

**I.  BACKGROUND**

Petitioner is a twenty-year-old native and citizen of the Dominican Republic.  [ECF No. 2

1

¶ 32].  Petitioner entered the United States at age seventeen in or about 2023.  [Id.].  In May of 2026, Petitioner was arrested and charged with assault and battery on a police officer and resisting arrest.  [ECF No. 9 at 2]; [ECF No. 9-2].  On May 27, 2026, after an arraignment in Boston Municipal Court, Petitioner was released on his own recognizance.  [ECF No. 2 ¶ 36].  As Petitioner was exiting Boston Municipal Court, Immigration and Customs Enforcement ("ICE") arrested and detained him, [id.], and served him with a Form I-200 Warrant for Arrest, [ECF No. 9-3], and Notice to Appear alleging he was inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) and § 1182(a)(7)(A)(i)(I), see [ECF No. 9-1].

Petitioner remains in custody at the Plymouth County Correctional Facility in Plymouth, Massachusetts, [ECF No. 2 ¶ 36], and is currently in removal proceedings, [id. ¶ 37]; [ECF No. 9 at 2].  Petitioner has initiated the process to apply for Special Immigrant Juvenile Status in the state court of Massachusetts.  [ECF No. 2 at 1].  He filed the instant Petition on June 24, 2026, asserting violations of the Immigration and Nationality Act ("INA") and his due process rights under the Fifth Amendment to the United States Constitution.  See [id.].  Respondents oppose the Petition, arguing that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) or, in the alternative, that he is subject to mandatory detention under § 1226(c) based on his recent arrest and charges.  [ECF No. 9 at 3–4].

## II.    STATUTORY FRAMEWORK

Two statutes principally govern the detention of "noncitizens" or "aliens" pending removal proceedings: 8 U.S.C. §§ 1225 and 1226.  Section 1225, which applies to noncitizens "present in the United States who ha[ve] not been admitted," 8 U.S.C. § 1225(a)(1), "authorizes the Government to detain certain aliens seeking admission into the country," Jennings v. Rodriguez, 583 U.S. 281, 289 (2018).  Section 1226, in contrast, "authorizes the Government to

detain certain aliens already in the country pending the outcome of removal proceedings." Id. Section 1226(a) establishes a discretionary detention framework for noncitizens arrested and detained "[o]n a warrant issued by the Attorney General." For such individuals, the Attorney General may: (1) "continue to detain the arrested alien," (2) "release the alien on . . . bond of at least $1,500," or (3) "release the alien on . . . conditional parole." 8 U.S.C. §§ 1226(a)(1)–(2). Under § 1226, the arresting immigration officer makes an initial custody determination, but noncitizens have the right to request a custody redetermination or bond hearing before an immigration judge. See 8 C.F.R. §§ 1236.1(c)(8), (d)(1). Bond may be denied only if the government "either (1) prove[s] by clear and convincing evidence that [the noncitizen] poses a danger to the community or (2) prove[s] by a preponderance of the evidence that [the noncitizen] poses a flight risk." Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021).

Section 1226(c) is the sole exception to § 1226(a)'s discretionary detention framework. See 8 U.S.C. § 1226(c)(1). Until recently, § 1226(c) required the detention of noncitizens who are inadmissible or deportable because they have committed or been sentenced for certain criminal offenses, or because they are affiliated with terrorist groups or activities. See id. §§ 1226(c)(1)(A)–(D). Through the Laken Riley Act, enacted in January 2025, Congress expanded § 1226(c)'s mandatory detention to noncitizens who are "charged with, [are] arrested for, [are] convicted of, admit[] having committed, or admit[] committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." Id. § 1226(c)(1)(E).

3

III.    DISCUSSION

A.    Detention Pursuant to 8 U.S.C. § 1225(b)

Respondents maintain that the Petitioner's detention is authorized by 8 U.S.C. § 1225(b)(2); however, they concede that the legal issues presented in this Petition concerning detention under 8 U.S.C. § 1225(b)(1) are similar to those recently addressed by this Court in Morales v. Plymouth County Correctional Facility, No. 25-cv-12602, ECF No. 15 (D. Mass. Sep. 30, 2025).  [ECF No. 9 at 3].  In Morales, the Court joined other sessions of this Court, and other courts across the country, in holding that the arrest and detention of noncitizens within the United States is not governed by 8 U.S.C. § 1225(b), but rather the discretionary bond hearing framework under 8 U.S.C. § 1226(a).  On the facts before it, the Court does not find reason to deviate from the analysis presented in Morales, and accordingly concludes that Petitioner is therefore not subject to mandatory detention under 8 U.S.C. § 1225(b).

B.    Detention Pursuant to 8 U.S.C. § 1226(c)

The respondents alternatively argue that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c), as amended by the Laken Riley Act.  The statute provides, in relevant part, that the Attorney General shall take into custody any noncitizen who

> (i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person.

8 U.S.C. § 1226 (c)(1)(E)(ii).  Here, because Petitioner was recently arrested and charged with assault and battery on a police officer, Respondents argue his detention falls squarely within the parameters of 8 U.S.C. § 1226(c), [ECF No. 9 at 3], and they maintain that Petitioner's detention has not been so prolonged as to give rise to due process concerns, [id.].

When the Supreme Court considered § 1226(c) in Demore v. Kim, 538 U.S. 510 (2003),

4

prior to the Laken Riley Act amendment, it found the section "mandate[d] detention during removal proceedings for a limited class of deportable aliens—including those convicted of an aggravated felony." Demore, 538 U.S. at 517–18.  The habeas petitioner in Demore did not, however, "dispute the validity of his prior convictions, which were obtained following the full procedural protections our criminal justice system offers," id. at 513, and the Supreme Court held that the detention of "a criminal alien who has conceded that he is deportable, for the limited period of [the detainee's] removal proceedings" did not violate due process because such detention "serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed," id. at 528, 531.  As the First Circuit has explained, Demore upheld the constitutionality of a mandatory detention procedure as "applie[d] to a class of noncitizens who had already been convicted (beyond a reasonable doubt) of committing certain serious crimes." Hernandez-Lara, 10 F.4th at 35.

Here, Petitioner has been charged with assault and battery on a police officer, [ECF No. 9 at 2], but he has not been convicted of the offense or otherwise "received 'the full procedural protections' of the criminal justice system," Alcantara Guerrero v. Wesling, No. 26-cv-10928, 2026 WL 931503, at *4 (D. Mass. Apr. 6, 2026) (citing Demore, 538 U.S. at 513).  Respondents assert, [ECF No. 9 at 3–4], and Petitioner does not contest, see [ECF No. 2 ¶¶ 53–57], that the offense of assault and battery on a police officer qualifies as an "assault of a law enforcement officer offense" under the Laken Riley Act.  8 U.S.C. § 1226(c)(1)(E)(ii).  Assuming, without deciding, that it does, the Court will determine whether mandatory detention pursuant to that statute infringes upon Petitioner's procedural due process rights under the Fifth Amendment.

"[T]he question whether the Laken Riley Act, as applied, comports with due process

5

must be analyzed by looking to the factors articulated in Mathews v. Eldridge, 424 U.S. 319 (1976)." Alcantara Guerrero, 2026 WL 931503, at *4 (citing Hernandez-Lara, 10 F.4th at 27–28). To succeed on his due process challenge, Petitioner must demonstrate: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

The first factor, the private interest at stake, weighs heavily in Petitioner's favor. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Petitioner has been detained for approximately eight weeks, keeping him from his work and home life, which constitutes "a substantial deprivation of [his] liberty." Hernandez-Lara, 10 F.4th at 28.

The second factor, the risk of erroneous deprivation of Petitioner's liberty interest and the degree to which additional or alternative procedures may ameliorate that risk, see Mathews, 424 U.S. at 335, also favors Petitioner. He is being detained solely based on the arrest for a crime for which he is presumed innocent, which is a significant deprivation of liberty. In terms of procedural safeguards, he has not yet had the opportunity to contest that charge which would determine whether the deprivation was erroneous. Further, there has been no bond hearing, so Respondents have not had to show that Petitioner poses a flight risk or is a danger to the community, nor has Petitioner had the opportunity to present alternatives to incarceration that could assure his appearance or ensure the safety of the community. See Alcantara Guerrero,

6

2026 WL 931503, at *5; Hernandez-Lara, 10 F.4th at 41.

The third factor focuses on the governmental and public interests, including the fiscal and administrative burdens, that an additional procedural requirement would entail. Hernandez-Lara, 10 F.4th at 32–33; Mathews, 424 U.S. at 347. Respondents have not argued that the public interest weighs against providing Petitioner with a bond hearing, and the Court finds that providing a bond hearing to determine whether Petitioner presents a flight risk or danger to the community would not create an undue burden upon Respondents or adversely affect the public's interest. Additionally, affording Petitioner a bond hearing, and potentially releasing him on bond, could favor these interests by obviating the financial and societal expense of unnecessary detention. See Hernandez-Lara, 10 F.4th at 33.

In sum, as other sessions of this Court have found, the Mathews factors weigh in Petitioner's favor, and his continued detention violates his procedural due process rights under the Fifth Amendment. See Alcantara Guerrero, 2026 WL 931503, at *5; Doe v. Moniz, 800 F. Supp. 3d 203, 216–17 (D. Mass. 2025). Contrary to Petitioner's assertions, however, the correct remedy for this violation is a constitutionally adequate bond hearing rather than immediate release. Alcantara Guerrero, 2026 WL 931503, at *5 (finding that the petitioner's mandatory detention pursuant to § 1226(c) violated his due process rights and holding that he was entitled to a bond hearing pursuant to § 1226(a)) (citing C.R.R. v. Bondi, No. 26-cv-01282, 2026 WL 752462, at *3 (D. Minn. Mar. 17, 2026) (collecting Laken Riley Act cases where a bond hearing was found to be the appropriate remedy))). Because Petitioner's petition requests both immediate release and "any further relief this Court deems just and proper," [ECF No. 2 at 18], the Court will order other relief in the form of a constitutionally adequate bond hearing.

IV.    **CONCLUSION**

Accordingly, Petitioner's petition, [ECF No. 2], is **GRANTED IN PART** and **DENIED IN PART**.  Respondents are hereby **ORDERED** to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within ten calendar days of this order.  In that bond hearing, the immigration judge must expressly state the following findings on the record:

> (1) whether the government has "prove[d] by clear and convincing evidence that [Petitioner] poses a danger to the community or . . . by a preponderance of the evidence that [he or] she poses a flight risk," and
> (2) if the government has carried its burden:
> > (a) the particular evidence by which the government carried its burden;
> > (b) how the immigration judge "considered . . . [and] weighed . . . the information [Petitioner] provided" in relation to the government's evidence;
> > (c) the chain of reasoning connecting the evidence to the finding of dangerousness or flight risk; and
> > (d) the reasons why less-restrictive alternatives to detention, such as GPS monitoring, would be ineffective to mitigate any risk.

See Hernandez-Lara, 10 F.4th at 41; Atariguana-Buele v. Warden, Plymouth Corr. Facility, No. 26-cv-12168, 2026 WL 1825934, at *2 (discussing need for immigration judge to thoroughly engage with the record); Costa v. McDonald, No. 25-cv-13469, 2026 WL 371198, at *2 (D. Mass. Feb. 10, 2026) (collecting cases).

Respondents are **ORDERED** to file a status report within fourteen calendar days of this order stating whether Petitioner has been granted bond, and if his request for bond was denied, the reasons for that denial.

**SO ORDERED.**

July 29, 2026                                          */s/ Allison D. Burroughs*
                                                      ALLISON D. BURROUGHS
                                                      U.S. DISTRICT JUDGE